# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 3, 2022

Lyle W. Cayce
Clerk

No. 21-11220
Summary Calendar

Sean Parsons,

*Plaintiff—Appellant*,

*versus*

Liberty Insurance Corporation,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-cv-1682

Before Smith, Stewart, and Graves, *Circuit Judges*.

Per Curiam:*

Sean Parsons ("Parsons") appeals the district court's grant of summary judgment for Liberty Insurance Corporation ("Liberty"). He claims Liberty failed to timely pay him under his homeowner's insurance policy (the "Policy") because the appraisal award was issued on April 2,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-11220

2021, and he did not receive payment until six business days later, on April 13, 2021. However, both the Policy's explicit language and Texas Insurance Code provide that payment must be made within five business days of *notifying* the claimant that the insurer will pay the claim, not the date of an award's issuance. Because Liberty mailed its notification of acceptance together with the payment, it timely paid Parsons.

We AFFIRM.

## BACKGROUND

In June 2019, a hailstorm damaged Sean Parsons's home. He submitted a claim under his homeowner's insurance policy to Liberty Insurance Corporation. Over the next year, Liberty made several payments to Parsons, but Parsons disagreed with Liberty's assessments of damages. So, in May 2020, before Parsons filed suit, Liberty demanded an appraisal of the damages under the Policy's appraisal clause.

The parties do not dispute the timeline post-appraisal: On Friday, April 2, 2021, the umpire issued the appraisal award. On Tuesday, April 6, 2021, Liberty "issued" payment to Parsons by writing a check and sending it to its general counsel. On Monday, April 12, 2021, Liberty's counsel received the check and mailed a letter notifying Parsons's counsel that Liberty would pay the award. Liberty included the payment with the notice. On Tuesday, April 13, 2021, Parsons's counsel received the letter and the check.

Under the Policy's Loss Payment provision, payment must be made within five business days of Liberty notifying the claimant that it will pay the claim:

> If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" *after we notify you*. If payment of your claim or part of your claim requires the

No. 21-11220

performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

Parsons filed suit against Liberty alleging breach of contract, unfair trade practices, breach of good faith and fair dealing, breach of express and implied warranty, insurance fraud, and violations of the Texas Prompt Payment of Claims Act. The parties filed cross-motions for summary judgment. After reviewing the magistrate's report and recommendation recommending a partial grant, the district court granted summary judgment on Parsons's claims. It also reviewed de novo the portion of the report to which Liberty had objected and concluded there was "no genuine issue of material fact as to [Liberty's] full payment of potential interest owed." It thus rejected part of the magistrate's report and instead granted summary judgment in full for Liberty.

On appeal, Parsons challenges the district court's grant of summary judgment for Liberty only as it relates to the payment of his claim after the appraisal. He argues that Liberty did not pay him within five days of the umpire's appraisal award, so the payment was untimely under the Texas Insurance Code and the Loss Payment provision of the Policy. Liberty asserts the uncontested fact that, because it sent notice of the payment along with the payment itself, it satisfied the timeliness requirements. It argues in the alternative that, even if the umpire's award controlled the five-day window, its issuance of the check one day after the award satisfies this requirement.

## STANDARD OF REVIEW

Usually, we review the grant of summary judgment de novo. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). But plain error review applies where "a party did not object to a magistrate judge's findings of fact, conclusions of law, or recommendation to the district court" despite being "served with notice of the consequences of failing to object." *United States*

No. 21-11220

*ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 205 n.2 (5th Cir. 2013) (citing *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1)).

Here, the magistrate judge warned Parsons that the failure to file written objections within 14 days from his receipt of the Findings, Conclusions, and Recommendations would bar him from attacking the factual findings and legal conclusions on appeal:

> Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found . . . . Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

Nevertheless, Parsons did not file timely objections, so the district court did not conduct a de novo review of the record.[1] As a result, the district court's factual findings and legal conclusions are reviewed for plain error, despite Parsons's contentions that review is de novo. To prevail under that standard, Parsons "must show (1) that an error occurred; (2) that the error

---

[1] Liberty filed a partial objection to the report's finding that there was a material issue of fact as to whether Liberty had paid interest to Parsons, so the district court reviewed the findings related to potential interest payments de novo. However, the district court reviewed "the remaining portions of the Report and Recommendation under the clearly erroneous or contrary to law standard."

No. 21-11220

was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would seriously impact the fairness, integrity, or public reputation of judicial proceedings." *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825–26 (5th Cir. 2015) (quoting *Septimus v. Univ. of Hous.*, 399 F.3d 601, 607 (5th Cir. 2005)); *see also Douglass*, 79 F.3d at 1424.

## DISCUSSION

The parties agree that the timeline for payment is governed by Texas Insurance Code Section 542.057(a). This provision states that "[e]xcept as otherwise provided by this section, if an insurer notifies a claimant . . . that the insurer will pay a claim or part of a claim, the insurer shall pay the claim not later than the fifth business day after the date notice is made." Tex. Ins. Code Ann. § 542.057(a). Both parties state multiple times that the five-day window is tethered to the insurer's notification that it will pay the award. And, the parties do not dispute that Liberty's notification of payment occurred simultaneously with receipt of payment. But Parsons asserts, without any legal authority, that "there is at least a factual dispute about whether the umpire's award or the letter from April 12 triggered the duty to pay" under Texas law. This unsupported argument contradicts his briefing, but it also has no legal support.[2]

Texas Insurance Code specifically requires that payments be made within five days of the insurer notifying the claimant that it has accepted the claim. *See, e.g., Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,

---

[2] Because Parsons cites no legal authority that the five-day payment window is governed by the appraisal award, this argument is likely waived. *See* Fed. R. App. P. (a)(9)(A) (stating that the appellant's brief must contain its "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

801 F.3d 512, 518 (5th Cir. 2015) ("If the insurer accepts the claim and 'notifies a claimant under [§ ] 542.056 that the insurer will pay a claim or part of a claim,' it has five days to do so."); *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.,* 795 F.3d 496, 505 (5th Cir. 2015) ("[I]f the insurer notified the claimant . . . that it was accepting the claim, § 542.057 provides that 'the insurer shall pay the claim not later than the fifth business day after the date notice is made." (citation omitted)). Only if notification of acceptance occurs can the five-day countdown begin.[3]

On April 13, 2021, Parsons received notice that Liberty would pay him. That same day, and in the same mailing, Parsons received the payment. The payment clearly falls within the five-day requirements of the Texas Insurance Code and the Policy's Loss Payment provision. Parsons has failed to demonstrate any genuine issue of material fact that Liberty breached a contract or that the payment was untimely. And, at minimum, he has not shown that the district court's grant of summary judgment for Liberty was plainly erroneous.

For these reasons, we AFFIRM the district court.

---

[3] To the extent Parsons argues that Liberty would be allowed to indefinitely withhold payment if it could send payment any time after the appraisal award, we note that other provisions of the Texas Insurance Code require deadlines to accept or reject payment of claims. *See* TEX. INS. CODE ANN. § 542.056 (mandating that "an insurer notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss").