**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 13-30327
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2013

Lyle W. Cayce
Clerk

United States of America, ex rel, WANDA STEPHENSON,

Plaintiff - Appellant

v.

ARCHER WESTERN CONTRACTORS, L.L.C., formerly known as Archer Western Contractors, Limited; ALBERICI ENTERPRISES, also known as Alberici Constructors, Incorporated; PATCO TRANSPORT, INCORPORATED, doing business as Patco Logistics, L.L.C.; C.K.A., L.L.C.; R. PEADEN TRUCKING, INCORPORATED; TAMMANY HOLDING COMPANY, L.L.C., formerly known as Tammany Holding Corporation; WILLOW BEND VENTURES, L.L.C.; BAYOU SAND & GRAVEL, L.L.C.; BATOM ENTERPRISES, L.L.C.; BERTUCCI CONTRACTING COMPANY, L.L.C.; PEARLINGTON DIRT, L.L.C.; PATCO LOGISTICS, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1043

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Wanda Stephenson appeals the district court's grant of a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  For the reasons stated below, we AFFIRM.

## FACTS AND PROCEEDINGS

In August 2005, the levees surrounding New Orleans failed catastrophically, and the city was submerged by the floodwaters. Subsequently, the United States Army Corps of Engineers ("USACE") orchestrated the construction of a system of levees that was said to provide one hundred years of flood protection to the New Orleans area.  To rebuild and construct these levees, USACE contracted with Archer Western Contractors, L.L.C. and Alberici Enterprises (the "prime contractors").  These companies contracted with trucking brokers and trucking companies to haul clay and other earthen materials to build up the levees, including Patco Transport, Inc., R. Peadon Trucking, Inc., Patco Logistics, L.L.C., Bertucci Contracting Company, L.L.C., and Batom Enterprises, L.L.C. (the "trucking brokers").  These truckers drew clay and sand materials from pits run by Tammany Holding Co., L.L.C., Willow Bend Ventures, L.L.C., Pearlington Dirt, L.L.C., and Bayou Sand & Gravel, L.L.C.  (the "pit operators"). Collectively, these companies are the Defendants.

The contract between the USACE and the prime contractors contained a provision mandating compliance with all "Federal, state, and municipal laws, codes and regulations applicable to the performance of the work."  This contract required express certification of compliance with all of the specifications, terms, and conditions of the contract in each pay application and payment voucher.

Wanda Stephenson, the owner and manager of a trucking company, brought a qui tam suit under the False Claims Act ("FCA") alleging that these companies filed false certifications with the USACE as a pre-requisite for payments under their contracts to provide earthen materials to the levee projects. Specifically, she alleges that truckers consistently hauled loads in excess of the weight limits on highways (80,000 lbs.) and bridges (40,000 lbs.). These truckers then made express certifications with USACE that they were complying with all provisions in their contract, including the provision that they were in compliance with all "Federal, State, and municipal laws, codes and regulations applicable to the performance of their work." She accuses the trucking brokers of submitting claims for payment to the prime contractors in violation of contracts that required compliance with the weight laws. She alleges that the pit operators "were required by law to ensure that trucks leaving their pits were not violating the legal weight limits," and they ignored this obligation to let "visibly overweight trucks" travel the highway.

Stephenson filed her complaint under seal on April 24, 2012. The United States declined to intervene and Stephenson amended the complaint. The Defendants filed motions to dismiss under Rules 12(b)(1),[1] 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. On March 6, oral argument was held on the motions to dismiss and the district court ruled for the Defendants on the Rules 12(b)(6) and 9(b) motions. The court stated, "I don't think the plaintiff has successfully alleged that any of the defendants have made false certifications of compliance on which payment was conditioned under the jurisprudence." The district court gave Stephenson twenty days to file an amended complaint that would pass Rule 9(b) muster. Stephenson declined

---

[1] Because the district court dismissed based on Rules 12(b)(6) and 9(b), it did not rule on the prime contractors' Rule 12(b)(1) motion.

to do so.    Final judgment of dismissal was entered on April 1, 2013. Stephenson appeals.

The prime contractors respond that the government knew that some trucks were overweight, but any issues about the trucks' weights or speeds were discussed with USACE during the project and resolved satisfactorily. The remedy under the contract was to issue a stop work order, which never occurred.   The pit operators respond that Stephenson's argument is not that the Defendants provided less or lower quality clay than required, but that the "clay was delivered too quickly, i.e. defendants should have utilized more trucks to deliver the same amount of clay."

## STANDARD OF REVIEW

"We review de novo a district court's ruling on a Rule 12(b)(6) motion." *United States ex. rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (2010).   "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (1997).

## DISCUSSION

Stephenson challenges the district court's dismissal of her claims against the defendants for failure to state a claim under the FCA.   To find a FCA violation, this court looks to see "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex. rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (internal quotation marks omitted).

"The term 'material' means 'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" *Steury*, 625 F.3d at 267. "The FCA is not a general 'enforcement device' for federal statutes, regulations, and contracts." *Id.* at 268. The key is whether the

> certification is a prerequisite to obtaining a government benefit. Thus, where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with a statute or regulation.

*Thompson*, 125 F.3d at 902.

We agree with the district court that the certification in this case was not a "prerequisite for payment." The certification was one of compliance with the contract's specifications, terms, and conditions. The contract contained boilerplate language stating that the company would follow the law. Absent a more specific certification of compliance, for example with traffic or roadway regulations, the FCA would here become a general enforcement device for traffic infractions.

Most tellingly, both Stephenson and the Defendants point out that the government knew the trucks were overweight: Stephenson tells us this was visible, and the Defendants provide emails from the government discussing the issue with the contractors. Yet, no stop work order was issued. The clay continued to be delivered to the levees. The contractors were paid. How could such "fraud" be material to payment if the defrauded party knows about it and remains satisfied with the work? It appears beyond doubt that USACE was not defrauded and the focus of the contract was on rapidly providing earthen material to provide one hundred years of flood protection to New Orleans, not on policing roadway weight regulations. Any inaccurate certifications were not material to payment.

In the alternative, Stephenson's claims would fail under Rule 9(b). "Claims brought under the FCA must comply with Rule 9(b). At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *Thompson*, 125 F.3d at 903 (internal citations and quotation marks omitted). "The frequently stated, judicially-created standard for a sufficient fraud complaint . . . instructs a plaintiff to plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (internal quotation marks and alteration omitted).

We agree with the district court that Stephenson's allegations fail to meet the requirements of specificity under Rule 9(b). Even if she were able to allege in part the particularity which the Rule requires, she has not alleged the "identity of the person making the misrepresentation and what that person obtained thereby." The contractors were not paid more for having more clay in individual trucks; they were paid for providing the entirety of the clay required for the levee projects. The district court offered Stephenson the opportunity to amend her complaint with the specifics that would meet Rule 9(b) requirements, and she declined to do so.

## CONCLUSION

We AFFIRM the district court's dismissal of Stephenson's complaint.