# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50704

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2015

Lyle W. Cayce
Clerk

United States of America, ex rel, GEORGE GAGE,

　　　　Plaintiff - Appellant

v.

DAVIS S.R. AVIATION, L.L.C., doing business as Challenger Spares and Support; CHALLENGER REPAIR GROUP, L.L.C.; ORION AIR GROUP, L.L.C.; BOMBARDIER, INCORPORATED; NORTHROP GRUMMAN CORPORATION; STEVE DAVIS, Individually; NORTHRUP GRUMMAN DEFENSE MISSION SYSTEMS; NORTHROP GRUMMAN SPACE AND MISSION SYSTEMS, INCORPORATED,

　　　　Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-904

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:*

The False Claims Act is a potent remedial statute. As a counterweight to the statute's power and as a shield against fishing expeditions, FCA suits are subject to the screening function of Federal Rule of Civil Procedure 9(b).

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50704

Relator George Gage raises allegations about the maintenance and operation of military aircraft in a war zone; however, despite repeated opportunities, he has not complied with the FCA's pleading requirements. For that reason, we AFFIRM the district court's dismissal of his complaint.

## FACTS AND PROCEEDINGS

The following allegations come from Gage's Third Amended Complaint ("TAC"). In 2009, Northrop Grumman contracted with the United States Air Force ("USAF") to provide the Battlefield Airborne Communication Node ("BACN")—a system critical to interservice troop communication—and to operate three Bombardier aircrfaft containing the BACN. Orion Air Group, L.L.C., in turn, subcontracted with Northrop to operate and maintain the BACN aircraft. Gage alleges that the critical nature of the BACN missions and the heavy use of the aircraft required Orion to acquire replacement parts, many of which were not readily available from original equipment manufacturers. One of the sources to which Orion looked was CSS.[1]

In April 2008, CSS, assisted by Bombardier, acquired a civilian Bombardier aircraft (Serial Number 9211) that had crash landed in Canada (the "9211 Aircraft"). Gage alleges that parts from the 9211 Aircraft, including Rolls Royce engines and a Variable Frequency Generator ("VFG"), were defective and could present a potential safety risk. Indeed, many parts were listed as "suspect" on a Worldwide Communication issued by Rolls Royce following the crash. Gage alleges that CSS sold parts from the 9211 Aircraft to Orion, which installed them on BACN aircraft. On June 28, 2010, an Orion-operated BACN aircraft containing the 9211 Aircraft's VFG suffered a "catastrophic incident" over Afghanistan after the VFG exploded. Gage alleges

---

[1] In this opinion, "CSS" refers to defendants Davis S.R. Aviation, L.L.C. d/b/a Challenger Spares and Support; Challenger Repair Group, L.L.C., and Steve Davis, individually.

2

No. 14-50704

that defendants were part of a scheme to defraud the government whereby CSS and Bombardier supplied non-conforming parts to Orion, who installed them on aircraft as Northrop's subcontractor in violation of contractual or regulatory requirements.

Relator Gage's involvement in this case stems from his participation in a prior lawsuit that also arose from the crash of the 9211 Aircraft. In May 2010, CSS sued Rolls Royce in the Western District of Texas, alleging that Rolls Royce made false statements in the Worldwide Communication about the condition of the engines acquired by CSS in an attempt to prevent CSS from selling the engines on the open market. CSS alleged that it was damaged because it was forced to lease the engines to Orion for less than CSS would have received had Rolls Royce not issued the advisory. Gage asserts that he learned of defendants' false claims during his review of Rolls Royce documents while employed as an expert for Rolls Royce during that litigation.

On September 27, 2012, Gage filed his initial *qui tam* complaint. After Gage filed a First Amended Complaint, the government declined to intervene. Gage then filed a Second Amended Complaint. After a hearing, the district court granted defendants' motions to dismiss but permitted Gage a "final opportunity" to amend his complaint to comply with Rule 9(b). Defendants again filed motions to dismiss the resulting TAC, and CSS filed a motion for sanctions, claiming that Gage had violated a protective order in the Rolls Royce litigation. On July 2, 2014, the district court dismissed both the TAC and CSS's motion for sanctions. The district court held that most of Gage's claims were foreclosed by the public disclosure bar, and that no claims were pled adequately under Rule 9(b). Gage was denied leave to amend a fourth time, and appeals the district court's dismissal with prejudice.

3

No. 14-50704

## DISCUSSION

### I.

The dispositive issue on appeal is whether the district court properly dismissed the TAC for failure to state a claim with particularity.

### A.

This court reviews a district court's dismissal of a complaint for failure to state a claim de novo, accepting as true the plaintiff's well-pleaded factual allegations. *United States ex rel. Steury v. Cardinal Health, Inc.* ("*Steury I*"), 625 F.3d 262, 266 (5th Cir. 2010). "The plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation." *Id.* An FCA complaint must meet the heightened pleading standard of Rule 9(b). To allege fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Id.* (internal quotation marks and citation omitted); *see also United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) ("The time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby must be stated . . . in order to satisfy Rule 9(b)." (alteration in original) (internal quotation marks and citation omitted)).

### B.

Any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable under the FCA. 31 U.S.C. § 3729(a)(1)(A)–(B). "[T]o state a claim under the FCA, a plaintiff must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government."

4

No. 14-50704

*Steury I*, 625 F.3d at 267 (citing *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009)).

## C.

Gage does not allege that defendants expressly certified that parts sold to the government complied with any statute, regulation, or contractual provision. Rather, Gage's allegations fall under the implied false certification theory of FCA liability. He alleges that the defendants, by selling parts to and requesting reimbursement from the government, implied that the parts complied with certain contractual or regulatory provisions. *See id.* at 268. For over a decade, this court has avoided deciding whether to recognize the implied certification theory. *See, e.g. id.* ("This Court has not yet recognized the implied-certification theory. . . . We need not resolve the issue today, because in any event the factual allegations in Steury's amended complaint provide no basis for implying a false certification."); *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 382 (5th Cir. 2003) (assuming without deciding that the implied false certification theory applies). Because even assuming the theory applies, we find that the district court correctly held that Gage's factual allegations do not plead with particularity the required "who, what, when, where, and how" of an implied false claim, once again we defer that decision to another day.

### 1.

Gage's implied false certification theory fails because he does not plead with particularity *what* was false about the claims or *how* they were false. A prerequisite for claims to be false is that they "certif[y] compliance (implicitly or explicitly) with some statute, regulation, or contract provision . . . ." *Steury I*, 625 F.3d at 269. To plead the "what" of a claim in a case such as this, therefore, a plaintiff must state with particularity the statute, regulation, or contract provision with which defendants have certified compliance. *See id.*

Gage does not allege that defendants violated a statute. Instead, he claims that defendants violated several Federal Acquisition Regulation ("FAR") and Defense Federal Acquisition Regulation Supplement ("DFARS") provisions. Gage does not plausibly allege that the operative contract between the USAF and Northrop (the "Northrop contract") contains these provisions. He does not directly identify any contract provision that was violated, because he acknowledges he has not seen the Northrop contract.[2] *See United States ex rel. Steury v. Cardinal Health, Inc.* ("*Steury II*"), 735 F.3d 202, 206 (5th Cir. 2013) (holding allegations deficient because they did "not identify the contractual provisions" allegedly violated). Gage argues that the Northrop contract must contain these provisions because they are mandatory, but FAR and DFARS provisions are not required in all government contracts. *See* 48 C.F.R. § 1.104 ("The FAR applies to all acquisitions as defined in part 2 of the FAR, *except where expressly excluded.*" (emphasis added)); *see also* 48 C.F.R. § 46.311(a) ("The contracting officer shall insert the clause at 52.246-11 . . . in solicitations and contracts *when the inclusion of a higher-level contract quality requirement is necessary.*" (emphasis added)); *see Ins. Co. of N. Am. v. Aberdeen Ins. Servs., Inc.*, 253 F.3d 878, 885 (5th Cir. 2001) (noting that some FAR provisions are not automatically included in government contracts). Neither has Gage plausibly alleged that provisions listed in the TAC are independently applicable to the USAF or to military aircraft in Afghanistan. *See, e.g.*, 14 C.F.R. § 91.9 (referring only to "civil" aircraft).[3]

---

[2] Defendant Northrop, the only party in this action that signed the contract, disputes that the contract is classified. On a motion to dismiss, we accept as true all factual allegations contained within the complaint, so we assume the contract is classified. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[3] Gage criticizes the district court for not crediting his allegations that Orion breached a second contract—between USAF and Orion—that required Orion to follow FAR and DFARS. The district court was correct to discount the Orion contract because the TAC

No. 14-50704

Gage's failure to allege with particularity that the Northrop contract includes the listed provisions, or that regulations are otherwise applicable, is fatal to his claim because materiality is a required element of an FCA claim. *See Steury I*, 625 F.3d at 267. And materiality—whether the false claim has "a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money or property"—is necessarily speculative without particularized and plausible identification of the contractual or regulatory provision allegedly violated. 31 U.S.C. § 3729(b)(4) (defining materiality as the term is used in the FCA); *Steury II*, 735 F.3d at 207 ("[M]erely descriptive or conclusory allegations about the . . . contracts [are] insufficient."). Gage therefore has not sufficiently pleaded the *what* of a false claim. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("Thompson's allegations . . . amount to nothing more than speculation, and thus fail to satisfy Rule 9(b).").

Even if the cited provisions did apply to defendants' actions, Gage merely lists them and has not pleaded *how* they were violated. Gage uses conclusory terms such as "non-conforming" and "unapproved" to describe the parts CSS sold, but does not explain how the parts failed to comply with the contract to maintain the BACN aircraft or with any applicable regulation. The essence of Gage's complaint is that CSS sold a government contractor parts from a crashed aircraft without informing the government of their pedigree, and at least one of those parts failed. Yet Gage fails to provide details on how these events were false or fraudulent. Gage concedes that "there is nothing inherently wrong under [FAA] regulations or the [FAR] with obtaining parts from an accident related aircraft" and merely contends, without elaboration,

references the Orion contract in a single conclusory paragraph and does not plead the "what" or "how" of the false claims with any particularity.

7

that "the manner in which the defendants conspired to obtain the parts" violated the regulations.  Gage has failed to allege how the parts deviated from any government standards.  *See Steury II*, 735 F.3d at 206 ("[S]imply stating the conclusion will not do. . . . [T]he essence of the fraudulent activity of implied false certification of compliance cannot be gauged unless [the relator] reveals how the [product] deviated from the government's specifications.").  Gage argues that the VFG's failure and explosion show that it was non-airworthy and so failed to comply with regulations.  But post hoc product failure is not enough, standing alone, to create an inference that the product was non-compliant at the time of sale.  *Cf. Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014) (stating the general rule that product failure, standing alone, is insufficient proof of a manufacturing defect under state products liability law).

Gage further argues that complying with the Rule 9(b) pleading standard is impossible because the Northrop contract is classified.  We may relax the pleading requirements of 9(b) if "facts relating to the fraud are peculiarly within the perpetrator's knowledge."  *Dow Chem. Co.*, 343 F.3d at 330 (internal quotation marks and citation omitted).  Here, relaxation is not warranted.  The contract is not peculiarly within Northrop's knowledge because the USAF, as Northrop's counterparty, presumably also has knowledge of the contract.  *See United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (declining to relax the 9(b) standard where a government entity possessed documents containing requisite information), *abrogated on other grounds by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).

## 2.

The TAC also fails to plead with particularity *when* and *where* defendants made false claims.  Gage states the precise dates of Bombardier's

No. 14-50704

alleged submissions of parts to original equipment manufacturers for repair, and of CSS's sales of parts to Orion. However, Gage does not allege with any specificity when Northrop—or any other defendant—presented invoices to the USAF. Gage alleges only that defendants submitted nearly $4 million of false invoices to the government between 2009 and 2011. This range is not specific enough to comply with Rule 9(b). *See United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722–23 (5th Cir. 2008) (allegations that defendants routinely submitted bills over the course of seven years were not sufficiently specific under 9(b)). Gage hypothesizes, in his brief and without citing the TAC, that the submission of invoices occurred within sixty days of the sale of the parts. This contention is speculative and does not withstand dismissal under Rule 9(b). Gage also fails to plead where the alleged wrongful acts occurred.

### 3.

By not alleging with particularity the *who*, *what*, *when*, *where*, and *how* of the alleged fraudulent scheme, Gage has failed to comply with Rule 9(b).

### D.

Gage contends that the district court erred in not permitting him to amend his complaint for a fourth time. We review a district court's denial of leave to amend a pleading for abuse of discretion. *See Steury I*, 625 F.3d at 266. "The district court properly exercises its discretion . . . when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014). The district court denied Gage leave to amend because it determined that he had years and several chances to refine his pleadings, he was previously warned that the TAC would be his last chance, and "leave to amend would be wholly futile." Gage does not identify new allegations that would make amendment effective. Instead, he reargues that the TAC already satisfies the requirements of Rule 9(b) and says

No. 14-50704

that he would name additional *defendants* if granted leave to amend.[4] The district court did not abuse its discretion in determining that Gage has had sufficient opportunity to plead his claims and that further amendment would be futile.[5]

## II.

We therefore hold that this case was properly dismissed with prejudice for failure to plead fraud with particularity. "Because this Court may affirm on any grounds supported by the record below," we need not address the interesting and difficult jurisdictional questions concerning the public disclosure and original source doctrines. *Dow Chem. Co.*, 343 F.3d at 330.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] Gage also argues that he is no longer constrained from including detailed allegations in the TAC because the specter of sanctions for violating the protective order in the Rolls Royce litigation has been removed. The motion for sanctions was dismissed, not denied, so Gage has not shown that he may freely add any new allegations that previously had been subject to the protective order.

[5] Gage's difficulty in serving Orion does not warrant granting leave to amend because curing it will have no effect on the deficient allegations in the complaint.