# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 20, 2019

Lyle W. Cayce
Clerk

No. 18-20395

United States of America, ex rel, SHATISH PATEL, Medical Doctor, ex rel.;
HEMALATHA VIJAYAN, Medical Doctor, ex rel.,

      Plaintiffs - Appellants

v.

CATHOLIC HEALTH INITIATIVES; ST. LUKE'S HEALTH SYSTEM
CORPORATION; ST. LUKE'S COMMUNITY DEVELOPMENT
CORPORATION-SUGARLAND; DAVID FINE; DAVID KOONTZ; STEPHEN
PICKETT,

      Defendants - Appellees

---

Appeal from the United States District  Court
for the Southern District of Texas
USDC No. 4:17-CV-1817

---

Before JONES, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

This case involves a *qui tam* action brought under the False Claims Act
("FCA"), 31 U.S.C. §§ 3729–3733.[1]  The relators, Shatish Patel and Hemalatha

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

[1] The claims at issue on appeal all arise under federal law, and therefore subject
matter jurisdiction exists under 28 U.S.C. § 1331.  Because Relators timely appealed, we have

No. 18-20395

Vijayan[2] ("Relators"), are physicians who owned a partnership interest (via the St. Luke's Sugar Land Partnership, L.L.P.) in the St. Luke's Sugar Land Hospital (the "Hospital"), which was controlled by the St. Luke's Health System (the "System").[3] They sued various defendants over alleged violations of the FCA involving misrepresentations of the Hospital's ownership, the Anti-Kickback Statute ("AKS"),[4] and the Stark Law.[5] They also sued under a Texas statute.[6] The district court ultimately dismissed the federal claims with prejudice and the Texas claim without prejudice, declining to exercise supplemental jurisdiction. We AFFIRM.

## I.    Background

The district court's opinion in this case is lengthy and thorough. *United States ex rel. Patel v. Catholic Health Initiatives* (*Patel II*), 312 F. Supp. 3d 584 (S.D. Tex. 2018). Additionally, the events relevant to this case have previously been the subject of other litigation and appeals. *Patel v. St. Luke's Sugar Land P'ship* (*Patel I*), 445 S.W.3d 413 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Sonwalkar v. St. Luke's Sugar Land P'ship*, 394 S.W.3d 186 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Accordingly, we write only briefly to address the issues raised in this appeal.

---

jurisdiction over the district court's final decision under 28 U.S.C. § 1291.

[2] The third physician who was part of the district-court case, Wolley Oladut, did not join the appeal.

[3] Previously, forty-nine percent of the partnership was owned by the physicians and fifty-one percent was owned by Defendant St. Luke's Community Development Corporation-Sugar Land ("SLCDC-SL"), which was controlled by the System. At some point, Catholic Health Initiatives became the owner of the System.

[4] 42 U.S.C. § 1320a-7b(b).

[5] *Id.* § 1395nn.

[6] The Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE ANN. §§ 36.001–.132.

2

No. 18-20395

The Hospital was originally structured with individual doctors, including Relators, as partners. When a provision of the Affordable Care Act ("ACA") prevented the Hospital from expanding while preserving physician ownership,[7] the System made offers to rescind Relators' and other physicians' partnership interests pursuant to the Texas Securities Act ("TSA"). The TSA allows rescission for the original price paid for a security, plus interest, in exchange for a release of potential liability under the TSA. TEX. REV. CIV. STAT. ANN. art. 581-33.

Relators refused to accept rescission and, after multiple lawsuits in state court, sued the System under the FCA. They have three theories of liability under the FCA. The first two rely on the argument that there was no risk of TSA liability, and the rescission transactions were therefore improper. Consequently, Relators argue that (1) the rescission violated the AKS because it was really designed to induce Medicare referrals, and (2) the rescission violated the Stark Law because it constituted an improper financial relationship between an entity and physicians. Proven violations of these statutes can support liability under the FCA.[8] Relators' final federal claim is that, by stating to the government that ownership of the Hospital passed from the original partnership to its management entity by operation of law (without

---

[7] The relevant provision, which the ACA added to the Stark Law, is 42 U.S.C. § 1395nn(i)(1)(B).

[8] When "the government has conditioned payment of a claim upon a claimant's certification of compliance with . . . a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997). Relators alleged in their complaint that the Hospital certified compliance with the AKS and the Stark Law in their Medicare filings and that reimbursement was conditioned upon these certifications. Additionally, the AKS specifically provides that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of Title 31" (the FCA). 42 U.S.C. § 1320a-7b(g).

No. 18-20395

a winding-up period)—a theory that was held to be incorrect by a Texas Court of Appeals—the System made a material misrepresentation and thereby violated the FCA.

## II.    Standard of Review

Intermixed with the Federal Rule of Civil Procedure 12(b)(6) arguments are arguments that Relators' pleadings had to meet the higher pleading standards of Federal Rule of Civil Procedure 9(b). We review dismissals under Rules 12(b)(6) and 9(b) de novo. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). A plaintiff must satisfy Rule 12(b)(6) by alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "We accept all well-pleaded factual allegations as true, and we interpret the complaint in the light most favorable to the plaintiff." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). For a claim under the FCA, a plaintiff must also "state with particularity the circumstances constituting fraud or mistake." *Grubbs*, 565 F.3d at 185 (internal quotation marks omitted) (quoting FED. R. CIV. P. 9(b)). Relators also contend that, if they failed to meet the pleading standards as to their claims, they should have been granted leave to amend under Federal Rule of Civil Procedure 15. We review denials of leave to amend a complaint for abuse of discretion. *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993). We now turn to the specific issues on appeal.

## III.    Discussion

### A. AKS Claims

Relators pleaded that "the System and SLCDC-SL knowingly and willfully forced the [p]artnership to offer statutory rescission to, among other things, induce the physician partners to continue referring services for which a Federal healthcare program may make payment in whole or in part." In

other words, because, according to Relators, the relevant defendants feigned a need to apply the TSA and award rescission payments higher than the "actual value" of the shares to buy out the physicians, those payments constituted kickbacks for referrals in violation of the AKS. As the district court correctly noted, however, Relators failed to tie one with the other: "If the AKS and FCA are interpreted to sanction this conduct, it is not clear what the System could have done to respond to Congress's new discouragement of physician ownership while complying with health care fraud statutes." *Patel II*, 312 F. Supp. 3d at 595. We agree with the district court's thorough analysis[9] of Relators' arguments. In the end, the defendants had a reasonable basis to utilize the TSA approach (not the least of which was Relators' own state-court lawsuit) and nothing ties the allegedly high payment for physician shares to any inducement of referrals. *Id.* at 594–99. We affirm the dismissal of the AKS-based claims.

## B. Stark Law Claims

The Stark Law prohibits a physician from making referrals for health services to an entity with which he or she has a financial relationship. 42 U.S.C. § 1395nn(a)(1)(A). In turn, the entity may not seek reimbursement from a federal health care program arising from a referral by a physician who has a financial relationship with the entity. *Id.* § 1395nn(a)(1)(B). However, an exception exists for an "isolated financial transaction" between an entity

---

[9] Relators argued that half the potential TSA claims were subject to a statute of limitations defense by the time of the defendants' rescission efforts and, therefore, that the "fear of claims" argument for the rescission process was untrue. We agree with the district court's analysis of that claim as it relates to claims under the TSA. The district court also discussed the potential for common law claims. To the extent that the district court intended this discussion to explain that the defendants were also seeking to release non-TSA claims via the rescission, *see* 312 F. Supp. 3d at 597–98, we agree with that analysis and limit our agreement with that discussion to that conclusion.

and the physician.  *Id.* § 1395nn(e)(6).  One requirement of this exception—"the lone leg on which Relators' claims stand," *Patel II*, 312 F. Supp. 3d at 600—is that the remuneration for the transaction reflect the "fair market value" of the transaction.  42 C.F.R. § 411.357(f)(i).  This argument once again implicates the question of whether there was a true threat of litigation that needed to be addressed via the TSA rescission mechanism.  The district court analyzed this question under the Stark Law claims in a manner similar to that of the AKS claims.  *Patel II*, 312 F. Supp. 3d at 599–600.  Under the same analysis we applied to the AKS claims, we agree.

## C. Allegations of False Claims of Hospital Ownership

Finally, we address Relators' allegation that the System made false claims in violation of FCA § 3729(a)(1)(B).  In relevant part, the FCA prohibits "knowingly mak[ing] . . . a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B).  The definitions of "knowingly" and "material" are as follows:

> The Act's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information."  And the Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

*Univ. Health Svcs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) (citations omitted) (first quoting 31 U.S.C. § 3729(b)(1)(A); then quoting 31 U.S.C. § 3729(b)(4)).

The essence of Relators' claim is that, following the purchase of all but

four physicians'[10] shares and the termination of those four shares after a missed capital call, the System alleged that SLCDC-SL now owned the entirety of the Hospital. Relators allege that the System's own counsel indicated that such ownership conversion was not automatic and later appellate decisions in the state-court litigation suggested the same. In *Sonwalkar*, decided in August 2012, the court granted a temporary injunction to two physician partners, holding that they had a probable right to relief because "the capital call was disallowed" and therefore the physicians' "interests could not be terminated for failure to pay the capital call." 394 S.W.3d at 203. Then, in November 2013, the same court held that the ownership of the Hospital did not automatically transfer from the partnership to SLCDC-SL. *Patel I*, 445 S.W.3d at 422–23. Notably, the court did not require the System "to reverse any of its actions predicated on termination of the physicians' partnership interests" because the court was not requested to do so, but it held that such a request would not be moot. *Id.* at 423. Thus, Relators contend, the continuing claim of changed ownership represented a "false claim."

The district court addressed the issue of whether the falsity claim was directed to a "legal falsity" or "factual falsity." *Patel II*, 312 F. Supp. 3d at 601–05; *see United States ex rel. Ruscher v. Omnicare, Inc.*, 663 F. App'x 368, 373 (5th Cir. 2016) (per curiam) (explaining the difference); *see also Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 385–86 (1st Cir. 2011) (criticizing the distinction). It is unnecessary to parse through these distinctions because we conclude that the alleged falsity, under the circumstances of this case, was not material.

---

[10] In addition to the three physicians who sued in the district court in this case, Dr. Subodh Sonwalkar also refused the rescission offering. He participated in the state-court litigation but not the federal proceeding on appeal here.

No. 18-20395

In a unanimous decision in *Escobar*, the Supreme Court clarified the bounds of the materiality requirement. The Court held:

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Escobar*, 136 S. Ct. at 2003. A violation is not material just because "the defendant knows that the Government would be entitled to refuse payment were it aware of the violation." *Id.* at 2004. In other words, "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Id.* at 2003. To use the Court's example, just because the government might require contractors to use American-made staplers does not mean that it would be a *material* misrepresentation under the FCA to knowingly use foreign-made ones. *See id.* at 2004.

Under the *Escobar* standard, proof of materiality might include "evidence that the defendant knows that the Government consistently refuses to pay claims" involving the type of misrepresentation at issue. *Id.* at 2003. But, crucially, "if the Government regularly pays a particular type of claim despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 2003–04.

As the district court correctly stated, "the Supreme Court understands materiality to turn on whether the government would pay the claim or not if it knew of the claimant's violation." *Patel II*, 312 F. Supp. 3d at 605. "Nothing in Relators' filings suggests that the government would stop the flow of funds

8

to this hospital if it knew the truth of its ownership; Relators' allegations concern only the direction in which they think the funds should flow." *Id.* Relators do not allege that the government "consistently refuses to pay claims" that contain an incorrect statement concerning the ownership of a hospital. *See Escobar*, 136 S. Ct. at 2003. Instead, the complaint specifies that the System has continued to submit claims and receive reimbursement, even after a court determined that the entity designated as owner of the Hospital was not really the owner. This suggests that the government does not care who the "rightful" owner of the Hospital is, and Relators have not alleged facts to the contrary. Importantly, nothing about the alleged misrepresentation here suggests that goods or services were falsely certified or improperly provided.

## IV.    Conclusion

Relators failed to state a plausible claim for relief under the FCA. We therefore AFFIRM the district court's dismissal of Relators' federal claims with prejudice and their Texas claim without prejudice. We also reject Relators' leave-to-amend argument for substantially the same reasons as the district court. *See Patel II*, 312 F. Supp. 3d at 607.